UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL R. MOORE,

        Plaintiff,

v.                  Case No. 24-cv-299-pp

HOWARD C. MARTIN,

        Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

  Plaintiff Michael R. Moore, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant was deliberately indifferent to his serious medical needs. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

### I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

  On March 11, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $43.17. Dkt. No. 5. The court received that fee on March 29,

2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names Dr. Howard C. Martin as the only defendant. Dkt. No. 1 at 1. The plaintiff alleges that he injured his knee on April 22, 2022, after he slipped and fell down a flight of stairs while he was incarcerated at Oshkosh Correctional Institution. Id. at 2. He submitted several requests to the Health Services Unit (HSU) for treatment of his pain; medical staff gave him Tylenol and an ice bag, referred him to a physical therapist and scheduled an x-ray that he underwent on May 11, 2022. Id. A physical therapist (not a defendant) "determined that there was something wrong" because of swelling and stiffness in the plaintiff's knee. Id. Other medical staff suggested he had a meniscal tear, but the physical therapist opined that the plaintiff's pain was emanating from his feet. Id. at 2–3.

The plaintiff says that in June 2022, he injured his back and received muscle relaxers, Tylenol, muscle rub and another referral for physical therapy. Id. But he says his physical therapy referral "was terminated or canceled due to [him], and a misunderstanding" after only a few sessions. Id. The plaintiff again submitted HSU requests about his pain and asked for an MRI because

his pain had worsened, and "for weeks nothing was being done." Id. He alleges that the "Pre-Release Committee" told him in August 2022 that he was being transferred to "KCC minimum community custody." Id. But medical staff performed the MRI a day before his transfer, which delayed the transfer. Id. The plaintiff told his provider (whom he does not name) that his conditions "were getting better," and he asked Dr. Tracy Thompson (not a defendant) to see his former primary care provider in Kenosha County after his transfer. Id. at 3, 5.

The plaintiff says he arrived at KCC on September 1, 2022 and was assigned to primary care provider Ashley Drab (not a defendant). Id. at 5. The plaintiff was able to leave KCC and drive to medical appointments, which included another MRI that revealed a torn meniscus. Id. Unnamed doctors gave the plaintiff steroid injections in his knee and acupuncture for his back pain. Id. He says he also was prescribed a knee brace and custom foot orthotic. Id. The plaintiff says he "had no concerns with the standard of care of KCC" and "was pleased with the medical treatment [he] was receiving." Id.

On March 14, 2023, the plaintiff was transferred from KCC to Racine Correctional Institution, where he immediately wrote to the HSU to request the knee brace and orthotic "that [he] was promised." Id. He says the primary care provider was Dr. Martin, who denied the knee brace but said he would ask nurses to contact KCC medical staff about the plaintiff's condition and the orthotics. Id. The plaintiff later wrote to the HSU about his appointment and a potential consultation for surgery, which he says was scheduled at KCC before his transfer. Id. He says Dr. Martin replied to his request, "let's focus on your back, we're not going to worry about the knee. The back is more important." Id.

The plaintiff continued to complain about his knee pain, but his "complaint was ignored." Id. He requested a change in his treatment and an MRI, and he says a "refer[r]al was ordered April 23, 2023." Id. But because referral appointments are "first come first serve," the plaintiff did not receive the MRI until September 23, 2023. Id. He says the "results of the MRI showed multiple health concerns," and that he "needed surgery ASAP." Id. Dr. Martin instead referred the plaintiff to a neurosurgeon at a nearby hospital to discuss "the cause of [his] pain." Id. The plaintiff says he had nerve damage, disc damage and a narrow spinal canal, all of which "was getting wors[e]." Id. The neurosurgeon recommended that he "try multiple things before surgery," even though he told the plaintiff that those alternate options might not help. Id. These options included core strengthening, exercise, diet, massage therapy and spinal injections. Id.

When the plaintiff returned from the hospital to Racine, he "had a brief conversation with Dr. Martin about [his] treatment plan." Id. at 5–6. Dr. Martin refused to "fool around with" the epidural injections and insisted they would "only make [his] condition worse." Id. at 6. The plaintiff says Dr. Martin "chose to disregard the specialist's directions or recommendations in the face of medical risks just to continue to plainly provide ineffective alternative treatments." Id. He claims that Dr. Martin was deliberately indifferent to his knee pain, which exacerbated his other symptoms and worsened his pain. Id. He claims that Dr. Martin continues to ignore his serious medical issues and "has no medical justifications for his actions/inaction." Id.

The plaintiff seeks $2.5 million in punitive and compensatory damages, a jury trial and recovery of his costs. Id. at 4.

C.  Analysis

The court reviews the plaintiff's allegations regarding the denial of proper medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,' including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he has suffered long-term pain in his knee and back, initially caused by a fall in April 2022. He alleges that he received helpful treatment at other facilities in 2022 and 2023, but that he has not received the same level of care at Racine from Dr. Martin. He says that Dr. Martin denied him a knee brace he had been promised and insisted they focus on the plaintiff's back injury, even after the plaintiff repeatedly complained about severe pain in his knee. Dr. Martin scheduled the plaintiff for an MRI, which revealed a torn meniscus in his knee. But allegedly he then refused to schedule

surgery for that injury and instead suggested conservative measures that the plaintiff complained did not help. Dr. Martin referred the plaintiff to a specialist but then ignored the specialist's recommendations for other treatment. The plaintiff alleges that Dr. Martin continues to ignore his complaints and recommend ineffective measures to treat his pain, which has only worsened.

The court finds that the plaintiff's allegations of severe knee pain caused by a meniscus tear and back pain satisfy the objective component of an Eighth Amendment claim. See White v. Woods, 48 F.4th 853, 857, 862 (7th Cir. 2022); Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The plaintiff's allegations satisfy the subjective component of an Eighth Amendment claim. Dr. Martin's alleged disagreement with the specialist's recommendations alone does not suggest he was deliberately indifferent to the plaintiff's pain. See Pyles, 771 F.3d at 409 (citing Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)). But the plaintiff alleges that Dr. Martin ignored him and his complaints and continues to follow an unhelpful treatment plan. Dr. Martin's alleged "persist[ence] in a course of treatment known to be ineffective" suggests he is not exercising his professional judgment when treating the plaintiff's knee and back injuries. Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005). The court will allow the plaintiff to proceed on this Eighth Amendment claim against Dr. Martin.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on

defendant Howard C. Martin at Racine Correctional Institution. Under the informal service agreement, the court **ORDERS** that defendant to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$306.83** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 29th day of April, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**